Otto F. JOHNSON, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–103.

Supreme Court of Wyoming.

April 1, 1994.

WY Public Defender Program, Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, WY Defender Aid Program, Diane M. Lozano and Jim Hewitt, Student Interns, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, Gina Gradecki, Student Intern, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The primary issue presented by this appeal is the claim of Otto Johnson (Johnson) that the trial court committed prejudicial error in a child sexual assault case by admitting into evidence a prior bad act. In addition, Johnson raises issues relating to the failure of the trial court to give a cautionary instruction with respect to charges of indecent liberties with minors and the refusal to give an identical instruction as a theory of the case instruction. We are satisfied the admission of the prior bad act is justified by our prior decisions; it would have been improper under Wyoming law to give the cau-

tionary instruction; and that impropriety should not be circumvented by simply calling the instruction a theory of the case instruction. The judgment and sentence entered in the district court is affirmed.

In his Brief of Appellant, Johnson states his issues in this way:

I. Whether the trial court erred in admitting evidence of defendant's prior confession to a similar crime in Utah three years earlier involving a different victim in violation of Wyoming Rules of Evidence 404(b).

II. Whether the trial court erred in failing to give to the jury a cautionary instruction, tendered by the defendant relating to the prejudicial effect of the charges and the difficulty in disproving them.

III. Whether the trial court erred in refusing appellant's instruction # A on his theory of the case.

The State of Wyoming, as appellee, combines the issues in the following manner:

I. Did the district court properly admit, under Wyoming Rule of Evidence 404(b), appellant's prior statement to a social worker concerning his sexual molestation of a child and his desire to have sexual intercourse with that child?

II. Did the district court properly refuse to give the jury instruction requested by appellant, either as a cautionary instruction or as a theory of the case instruction?

On May 6, 1992, an Information was filed in which Johnson was charged with two counts of taking immodest, immoral, or indecent liberties with a child between August 9, 1989 and December 31, 1989. The victims in the two counts are sisters, K.N.R. and M.L.R. K.N.R. was eight years old and in the third grade at the time of these incidents. M.L.R. was ten years old and in the fourth grade when these events occurred.

K.N.R. testified she had lived in Pinewood Village in Cheyenne with her father, mother, and three sisters. Johnson and his family were neighbors living in the next apartment building during the critical period. K.N.R. was a playmate of Johnson's four-year old daughter, T.J. Around August 24, 1989, K.N.R. was playing hide-and-seek with M.L.R., T.J., and Johnson. She testified she

went into the kitchen of the Johnson's apartment and discovered Johnson with M.L.R. who had her shirt off.

K.N.R. further testified that, three days after the hide-and-seek event, she was waiting for T.J. to come home to play and was alone with Johnson watching television in Johnson's apartment. She testified that she stood up and said, " * * * Fred [Johnson], I've got to go. He didn't say nothing. He grabbed me, pulled me back, held me down on the couch, and starting touching my chest underneath the shirt. * * * After he touched me on the chest, he then starting touching me under my pants on my vagina." After a short while, K.N.R. broke free from Johnson. She told the jury, "[h]e told me that if I ever told, he would try to get my parents."

K.N.R. avoided Johnson's apartment for about two months after this incident of fondling, but she went back to play with T.J. in October. On that occasion, Johnson grabbed K.N.R. and held her against the refrigerator with one hand while he touched her chest under her shirt with his other hand. This assault by Johnson ceased when T.J. came into the kitchen.

The final incident involving Johnson and K.N.R. occurred in December when she again went to the Johnson apartment to wait for T.J. to come home from preschool. K.N.R. was alone with Johnson when he took her into the bedroom, again prevented her from leaving, and began touching her chest under her shirt. She kept telling him "no," but he said, "I will give you a candy bar if you will touch my penis." K.N.R. agreed, and Johnson unzipped his pants and exposed his penis for her to touch. Johnson told her that, "if I told anybody he was going to get me." Soon after this last event, K.N.R.'s family moved. She testified she was afraid to tell her parents of these incidents.

The other count in the Information related to M.L.R. who testified that, around August 24, 1989, she was playing hide-and-seek with K.N.R., T.J., and Johnson. M.L.R. was alone with Johnson in his kitchen when he put his hand inside her pants and touched her buttocks and vaginal area. Johnson then

forced M.L.R. to the floor, took her shirt off, and touched her chest. He stopped when someone came in (that might have been K.N.R., according to her testimony summarized above). M.L.R. testified that, "[h]e said if I told my parents that he would come after me."

Following the testimony of the two victims, the State called a social worker as a witness. The social worker, who was trained in child abuse investigation for the state of Utah, testified she had occasion to investigate an allegation that Johnson had sexually molested a ten-year-old girl in July of 1984 in the state of Utah. She told the jury she had interviewed Johnson on August 8, 1986 and, in the course of the interview, Johnson admitted he had fondled the girl, and he wanted to have sexual intercourse with her, but she had gotten away from him before he could accomplish intercourse.

The jury found Johnson guilty of two counts of taking immodest, immoral, or indecent liberties with a child in violation of WYO.STAT. § 14–3–105 (1986). This appeal is taken from the Amended Judgment and Sentence of the Court entered on February 25, 1993, pursuant to which Johnson was sentenced to two consecutive terms of not less than six, nor more than nine, years in the Wyoming State Penitentiary. In addition, Johnson was required to pay $50 to the Victim's Compensation Fund.

■ The primary claim of error in this case arises out of the admission into evidence of Johnson's statement to the Utah social worker that he had fondled a ten-year old girl in Utah in July of 1984. Johnson argues the prosecution presented this evidence simply to inflame the jury and prejudice him. He points to the following testimony of the social worker as being the most prejudicial:

Q. If you would, how did he (Johnson) explain his behavior, what did he say?

A. He said that he was carrying the child. He was carrying on his shoulders, was fondling her, and sat her down and wanted to have intercourse with her, but, luckily, he said she stopped him and got away. And he said to me that he felt that he couldn't help it, because he was allergic to sweets and beer,

and sometimes he does things like that. ·

Q. Now, you indicated that he told you that he had the child up on his shoulders and he was fondling her.

A. He was fondling her.

Q. Where, what was he doing?

A. He was touching her in the vaginal area.

Later in her testimony, the social worker repeated this same discussion.

Johnson asserts the admission of this evidence violated WYO.R.EVID. 404(b), which provides:

*Other crimes, wrongs or acts.*—Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In a recent case, we reiterated the rationale for the prohibition of proof of other crimes or bad acts to prove the character of a person in order to show that he acted in conformity therewith:

Its intent is to avoid a demand that an accused defend acts of misconduct other than those charged in the indictment or information and to avoid potential confusion by members of the jury in addressing the issues of the case. The rule demands convictions are to be founded in those facts relevant to the crime or crimes charged. If the thrust of evidence of prior bad acts is only to demonstrate the defendant has a disposition to commit crimes, the evidence should be excluded.

*Dean v. State,* 865 P.2d 601, 606 (Wyo.1993) (*citing Wehr v. State,* 841 P.2d 104, 108 (Wyo.1992)).

We have analyzed this case according to the various criteria articulated in *Mitchell v. State,* 865 P.2d 591 (Wyo.1993); *Dean; Wehr; Longfellow v. State,* 803 P.2d 848 (Wyo.1990); *Coleman v. State,* 741 P.2d 99 (Wyo.1987); and *Bishop v. State,* 687 P.2d 242 (Wyo.1984), *cert. denied,* 469 U.S. 1219,

105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). Johnson, in his brief, said the prosecution offered the evidence of the prior bad act to show motive and knowledge and also to corroborate the alleged victim's testimony. He concedes the first three factors of the test articulated in *Bishop* were satisfied, but he argues the last two factors were not.[1] With respect to the fourth factor, Johnson contends motive is not an element of the charge of immodest, immoral, or indecent liberties with a minor and a "material issue and an element of a crime are never the same in the context of what the prosecution must demonstrate in order to prevail in a controversy." As to the fifth factor, Johnson argues there was not a substantial need for the probative value of the testimony of the Utah social worker. Our analysis leads to an antithetical resolution.

In the trial court, the prosecution contended the evidence of prior bad acts was offered to show intent, course of conduct, and credibility. In its brief on appeal, the State contends the evidence was offered to prove intent, identity, and motive. In *Dean*, we disapproved of a shifting of justification from trial court to appellate court but, in this instance, intent was argued in both courts, and the trial occurred before our decision in *Dean*. Motive has frequently been equated with intent. The State's argument is that all five factors of the *Bishop* criteria are met, and the uncharged sexual misconduct evidence properly was admitted. We hold the position of the State is correct.

As Johnson concedes, the first three factors in *Bishop* are present. The proof of the sexual abuse in Utah was plain, clear, and convincing; it occurred in 1984, only five years prior to the charged crimes, which is not too remote in time; and the evidence of the sexual abuse in Utah was introduced to demonstrate intent, motive, and identity— purposes permitted by WYO.R.EVID. 404(b).

We continue our analysis by treating with the fourth factor, which requires that the element of the charged offense that the evidence of other crimes is introduced to prove must be a material issue in the case. Johnson entered a plea of not guilty. His defense, essentially, was that he did not commit the crime, and charges such as this create a strong prejudice against the accused and are difficult to defend. Under the instructions given by the trial court, the State was charged with proof beyond a reasonable doubt that:

1. The crime occurred within the County of Laramie, on or about [a given date]; and

2. The defendant knowingly took immodest, immoral or indecent liberties with a [ten-year-old child, M.L.R., or an eight-year-old child, K.N.R.].

The State was required to establish the identity of Johnson as the person perpetrating the charged crimes.

Motive is not an ultimate fact or an element of the crime of knowingly taking immodest, immoral, or indecent liberties with a child, but motive is an intermediate evidentiary fact and one of the permissible grounds for admitting prior bad acts evidence under WYO.R.EVID. 404(b). "[T]he prosecution is permitted to prove the accused's motive to identify the accused as the perpetrator of the charged crime." *Mitchell*, 865 P.2d at 596–97.

In *Elliott v. State*, 600 P.2d 1044, 1048 (Wyo.1979), we adopted definitions of motive, saying:

In *Thompson v. United States*, 144 F. 14, 18 (1st Cir.1906), the court said:

"In the sense of the criminal law, motive has been well enough described as 'that

---

1. Under the five-part test articulated in *Bishop v. State*, 687 P.2d 242, 246 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985), the following factors are used as an analytical tool to determine if evidence of other crimes is admissible:

(1) The proof of the other similar crimes must be plain, clear, and convincing.

(2) The other crimes must not be too remote in time from the charged offense.

(3) The evidence of the other crimes must be introduced for a purpose sanctioned by Rule 404(b) of the Federal Rules of Evidence.

(4) The element of the charged offense that the evidence of other crimes is introduced to prove must be a material issue in the case.

(5) There must be a substantial need for the probative value of the evidence of the other crimes.

which leads or tempts the mind to indulge in a criminal act,' and it is something that may be resorted to as a legitimate help in arriving at the ultimate act in question. * * * "

In Webster's New International Dictionary, Unabridged, page 1475 (G. & C. Merriam Co., Publishers, 1961), there appear, among others, the following definitions of motive and its synonyms:

> " * * * something within a person (as a need, idea, organic state, or emotion) that incites him to action * * * the consideration or object influencing a choice or prompting an action * * * syn motive, spring, impulse, incentive, inducement, spur, and goad, can mean in common, a stimulus prompting a person to act in a particular way. * * * "

These definitions have continued in vogue in Wyoming. *Sandy v. State*, 870 P.2d 352, 357 (Wyo.1993); *Carey v. State*, 715 P.2d 244, 248 (Wyo.1986), *cert. denied*, 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986). They are consistent with that found in *Black's Law Dictionary* 914 (5th ed. 1979) (citations omitted):

> Cause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act.
>
> In common usage intent and "motive" are not infrequently regarded as one and the same thing. In law there is a distinction between them. "Motive" is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result. "Motive" is that which incites or stimulates a person to do an act.

Johnson's motive was present when he molested the ten-year-old girl in Utah according to his admission to the social worker. As the court held in *Mitchell*, motive is the cause of the perpetrator's actions and the uncharged acts demonstrate the effect of this motive.

The process then is: (1) the State offered the social worker's testimony to demonstrate Johnson's motive or cause for his actions, *i.e.*, he wanted to have sexual contact and sexual intercourse with young girls; (2) this motive was manifested in the uncharged act of fondling the ten-year-old in Utah, *i.e.*, that fondling evidenced the motive and demonstrated the cause of his actions; and (3) invoking the uncharged act of fondling in Utah demonstrated a motive on the part of Johnson that would cause him to fondle the bare chests and vaginal areas of eight-year-old K.N.R. and ten-year-old M.L.R. The incidents in both Utah and Cheyenne are explained by the same motive.

Since motive leads to action, courts hold motive is strong probative evidence with respect to identity, but we have noted the use of motive evidence is not beneficial in all cases. *Mitchell.* When the same motive is shared by the general population, evidence of motive to demonstrate identity is not particularly probative. Conversely, if a motive is unique to only one person or unique to a set of persons smaller than the general population, it is probative of identity. Even when a motive is shared by a number of others, courts tend to admit proof of motive. Applying WYO.R.EVID. 404(b), we have upheld its evidence of motive to prove identity when the young victim of the uncharged sexual conduct was the same gender as the young victim in the charged sexual assault. *Mitchell. See also Rivera v. State*, 840 P.2d 933 (Wyo.1992). Consistent with that practice, we affirm the decision of the trial court to allow the testimony of the social worker with respect to Johnson's prior sexual misconduct with the ten-year-old girl in Utah.[2]

In this case, Johnson's exhibition of aberrant sexual behavior may well have caused a trier of fact to wonder why he would behave in such a bizarre manner. Motive has relevancy with respect to the reason he would

---

2. In the context of a different sexual offense, we said:

> Incest involves aberrant sexual behavior—it is a type of sexual deviancy that is difficult to understand. Therefore, a trier of fact might well wonder what would motivate the accused

to behave in such bizarre manner. The evidence of prior sexual acts then was probative under the motive exception because of the unusual sexual behavior involved.

*Brown v. State*, 817 P.2d 429, 434 (Wyo.1991) (*citing Brown v. State*, 736 P.2d 1110, 1113 (Wyo. 1987)).

act as he did, and it becomes an inferential fact which was not necessary to prove guilt, but was pertinent to permit an inference of purpose in his commission of the act. The evidence was probative under the exception because of the nature of the sexual behavior involved and, in the context of such a case, motive is a material issue.

■ As to the fifth factor of *Bishop*, requiring a substantial need for the evidence of the prior misconduct, "[o]ur cases demonstrate that, in a sexual assault case, the substantial need for such [Wyo.R.Evid. 404(b)] evidence is present." *Rivera*, 840 P.2d at 941. We have said, in connection with sexual assault cases which often depend upon the word of the victim against the word of the defendant:

> One of the principal reasons for allowing evidence of prior acts or crimes in cases involving sex offenses is the fact that the usual situation places the testimony of a victim against that of the accused, increasing the pertinency of intent, knowledge, plan, motive, etc.

*Grabill v. State*, 621 P.2d 802, 810 (Wyo. 1980).

In a case such as this, because of the nature of the defense and the uncorroborated testimony of victims, a substantial need is present for evidence of prior bad acts. The State relied on the testimony of two young victims, and Johnson defended by arguing that such charges are prejudicial and difficult to disprove. Neither party had the benefit of physical evidence or independent witnesses to either prove or disprove the occurrence of the crime. Under such circumstances, the prosecution does have a substantial need for evidence of prior bad acts because of the inferences with respect to intent and identity that may be drawn from motive. We hold all five factors of the *Bishop* test were satisfied in this instance.

■ We also hold the trial court correctly ruled the probative value of the evidence outweighed the danger of unfair prejudice in accordance with Wyo.R.Evid. 403. It stated the argument on the record was adequate. We held in *Mitchell*, 865 P.2d at 600 (*citing Elliott*, 600 P.2d at 1049), that "[t]he function

of performing the comparisons required by Rule 403, W.R.E., generally is held to be discretionary with the trial court." In *Dean*, we articulated a mandatory procedure for introducing uncharged misconduct evidence in accordance with Wyo.R.Evid. 404(b). We held there that a trial court must articulate how it weighed probative value against unfair prejudice. The trial court here did not analyze this balancing process in accordance with *Dean*, but the trial in this case preceded the mandatory requirement set forth in *Dean*. Trial courts are reminded the *Dean* process must be used for cases tried after its promulgation.

In this instance, the trial court correctly ruled the probative value outweighed any danger of unfair prejudice. We note the trial court was careful to limit the evidence from the Utah social worker. She was not permitted to discuss any conviction resulting from the misconduct nor her interpretation of Johnson's admissions. The trial court allowed only the testimony concerning Johnson's admission.

■ With respect to the claims of error in Johnson's second and third issues, we treat those simultaneously because they relate to an identical instruction. Johnson's argument is that his Proposed Instruction A should have been given to the jury either as a cautionary instruction or as a theory of the case instruction. The proffered instruction reads as follows:

> The crime with which the defendant is charged is likely to create a strong prejudice against an accused. Thus, you should bear in mind the difficulty of defending against such a charge and consider carefully all the evidence and instructions of the Court.

The State's response is that the instruction was properly refused because similar instructions have been discredited in modern sexual assault cases; Johnson failed to object to the refusal of the court to give the instruction; the instruction as offered did not sufficiently inform the reader of Johnson's theory of the case; the instruction was not supported by competent evidence; the instruction did not state any defense recognized in this jurisdiction; the instruction was argumentative and

unduly emphasized one aspect of the law; and the substance of the instruction was covered adequately in the other instructions given by the court. We hold there was no error in failing to give this instruction to the jury.

There are three compelling reasons to sustain the ruling by the trial court. First, Johnson failed to make a timely objection to the refusal of the court to give the instruction. WYO.R.CRIM.P. 30 provides, in pertinent part:

No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection.

At the jury instruction conference, Johnson's counsel was asked if he objected to the instructions as tendered. He then inquired if the Proposed Instruction 7 (the same instruction identified as Proposed Instruction A) had been omitted. The trial court responded in the affirmative, and Johnson's attorney replied he had no objection. He did request that Wyoming Pattern Jury Instruction–Criminal 10.203, which reads the same as his Proposed Instruction A, be included as a theory of the case instruction. The court offered to give it if it were restyled as the theory of Johnson's case. Johnson's attorney declined the offer, and that foreclosed any right of appeal.

The second reason for sustaining the refusal of the trial court to give the instruction is articulated in *Story v. State*, 721 P.2d 1020, 1044 (Wyo.1986), *cert. denied*, 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986), where a cautionary instruction was offered stating,

"[y]ou are instructed that a charge [rape] of a nature preferred against the Defendant is as a rule easily made, but hard to prove and is equally difficult to disprove." This court noted that, in the 17th Century, rape was a capital offense. Because of the gravity of the punishment, a cautionary instruction was given to counterbalance an uncorroborated testimony instruction. We then held that neither the uncorroborated testimony instruction nor cautionary instruction was appropriate saying:

Because a witness may be a rape victim is no reason why she should be visited with condemnation, on the one hand, or clothed with sanctity, upon the other. *Lopez v. State*, supra, 544 P.2d [855] at 869 (Wyo. 1976) (Raper, J., concurring) citing *Taylor v. State*, 257 Ind. 664, 278 N.E.2d 273 (1972).

\*   \*   \*   \*   \*   \*

In summary, the instruction has outlived its usefulness, discriminates unfairly against certain victims, and is based on inaccurate premises. It can only distract the jury from its duty as fact finder. The cautionary instruction should no longer be given, even when the rape victim's testimony is uncorroborated.

*Story*, 721 P.2d at 1045–46.

These same reasons are applicable in sexual abuse or sexual assault cases.[3]

The third compelling reason to sustain the refusal of the trial court to give the instruction is that its content was adequately covered by other instructions. If the rule incorporated in a proffered instruction is included in other instructions, it properly may be refused by the trial court. *Prime v. State*, 767 P.2d 149 (Wyo.1989). In this instance, the

---

**3.** We remind the bar and the bench of our admonition with respect to the Wyoming Pattern Jury Instructions–Criminal set forth in *Vigil v. State*, 859 P.2d 659, 663 (Wyo.1993), where we said:

The Wyoming State Bar has, in place, a standing committee whose purpose "is to periodically review the criminal pattern jury instructions to ensure that they accurately reflect Wyoming law." Wyoming State Bar Directory 130 (1993). It appears that the Criminal Pattern Jury Instructions have not been reviewed or updated since their publication in 1978. To avoid the unfortunate circumstance which occurred here, [involuntary manslaughter in-

struction failed to include the essential element of "recklessly" because the outdated criminal pattern jury instructions did not reflect that element of the current Wyoming statutes] the Wyoming State Bar committee is urged to undertake the revision of the Criminal Pattern Jury Instructions and, upon completion, meet regularly thereafter to ensure that updated legal authority is incorporated in its work. Until such revisions have been accomplished, the trial bench and bar should view the existing Criminal Pattern Jury Instructions with circumspection.

obligation of the prosecution to prove the charge beyond a reasonable doubt, and the warning that the .Information was only a formal charge and not evidence of the guilt of the defendant were incorporated in other instructions. The jury also was advised that "[n]othing is to be taken by implication against him [defendant]," and the presumption of innocence was emphasized in the context of proof beyond a reasonable doubt. The jury was told the State had the burden of proof, and there was no obligation on a defendant to establish his innocence. Finally, the jury was advised it was their duty to follow the instructions of the court. The jury instructions, taken as a whole, properly encompassed the claim of Johnson to the cautionary instruction as well as to his theory of the case instruction. No error occurred.

We hold there was no error in this trial with respect to the admission of prior misconduct under WYO.R.EVID. 404(b) nor in the rejection of Johnson's Proposed Instruction A. The judgment and sentence is affirmed.