**Paul BEINTEMA, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 96–147.

Supreme Court of Wyoming.

April 23, 1997.

Todd Hambrick and Donald L. Fuller of Krampner & Fuller, L.L.C., Casper, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Bryan A. Skoric, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Paul Beintema appeals from his conviction for delivery of marihuana.

We affirm.

## ISSUES

Appellant presents the following issues for our review:

I. Was the Defendant denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution?

II. Were the prosecutor's statements during opening and questioning of the State's two witnesses regarding prior bad acts plain error requiring reversal?

## FACTS

On December 23, 1994, a Gillette police officer responded to a report involving a runaway. During his investigation, the police officer came into contact with a juvenile who possessed approximately fifty grams of marihuana. The juvenile had obtained the marihuana from Darrel Huskinson.

The police obtained a search warrant for the Huskinson home. During the search, the police recovered approximately two ounces of marihuana from the bedroom belonging to Darrel's parents, Brent and Tammy Huskinson. Mr. Huskinson told the police that he and his wife were heavy marihuana users and indicated that they purchased their marihuana from a Colorado man whose first name

was Paul and whose last name began with the letter "B". He provided the police with a telephone number for "Paul B."

Further investigation revealed that Appellant was the man who had supplied the marihuana to the Huskinsons. Appellant was arrested and charged with one count of delivery of marihuana, a controlled substance, under Wyo.Stat. § 35–7–1031(a)(ii) (Supp. 1996). Appellant pleaded not guilty to the charge, and a jury trial was held. The jury returned a guilty verdict. Appellant filed two motions for a new trial, claiming that sufficient evidence did not exist to convict him and that he had not received effective assistance from his trial counsel. The trial court denied Appellant's motions, and he appealed to this Court.

## DISCUSSION

### A. Other Bad Acts

Appellant contends that plain error occurred when evidence concerning his other bad acts was admitted at the trial and when the prosecutor commented on that evidence in his opening statement. Appellant also complains that, under *Dean v. State,* 865 P.2d 601 (Wyo.1993), reversible errors occurred when the State did not give notice of its intention to introduce other bad acts evidence at the trial and the trial court did not hold a hearing to determine whether the evidence was admissible.

In his opening statement, the prosecutor stated that Mr. Huskinson would testify that he had discovered several years earlier that he could obtain marihuana from Appellant. The prosecutor stated that the evidence would show that Appellant delivered marihuana to Mr. Huskinson every two or three months over the next several years. Mr. Huskinson did, in fact, testify at the trial to those matters. Appellant's attorney did not object to the prosecutor's comments or to the trial testimony about Appellant's prior deliveries of marihuana to Mr. Huskinson.

■ We turn first to Appellant's contention that, under *Dean,* the State was required to provide notice of its intention to present other bad acts evidence and the trial

court was required to conduct a hearing to determine whether the evidence was admissible. In *Vigil v. State*, 926 P.2d 351, 355 (Wyo.1996), we stated that a defendant must object in order to trigger the State's obligation to establish the admissibility of the evidence. *See also Gunderson v. State*, 925 P.2d 1300, 1303 (Wyo.1996). Further, the trial court is not required to conduct a hearing to determine whether the evidence is admissible when a proper objection to the evidence has not been made. 925 P.2d at 1303. Therefore, since Appellant did not object, the State was not required to establish the admissibility of the evidence, and the trial court was not required to conduct a hearing.

 We must now determine whether the trial court committed plain error by allowing the other bad acts evidence to be admitted at Appellant's trial. The admissibility of other bad acts evidence is governed by W.R.E. 404(b):

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We do not apply the five-part test which we adopted in *Dean* and modified in *Vigil* to determine whether the other bad acts evidence in this case was admissible under W.R.E. 404(b) because that analysis is intended to be conducted at the trial level rather than at the appellate level. *Spencer v. State*, 925 P.2d 994, 997 (Wyo.1996). Instead, we must determine whether the admission of the evidence amounted to plain error. *Id.*

> A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial

right has been denied him and as a result he has been materially prejudiced.

*Bradley v. State*, 635 P.2d 1161, 1164 (Wyo. 1981). *See also Vigil,* 926 P.2d at 357.

 Our decision concerning the second prong of the plain error analysis—whether a clear and unequivocal rule of law was violated—is determinative of this issue. When evidence " 'forms part of the history of the event or serves to enhance the natural development of the facts,' " that evidence is admissible as long as its probative value outweighs its prejudicial effect. *Crozier v. State*, 723 P.2d 42, 49 (Wyo.1986) (quoting *Commonwealth v. Evans,* 343 Pa.Super. 118, 494 A.2d 383, 390 (1985)). *See also Vigil,* 926 P.2d 351; *McCone v. State,* 866 P.2d 740, 752 (Wyo.1993). An obvious purpose for presenting the evidence of Appellant's other marihuana deliveries to Mr. Huskinson was to enhance the natural development of the facts in this case. The evidence of the continuing relationship between Mr. Huskinson and Appellant was relevant to help the jury understand the context of the charged delivery. Furthermore, the testimony about the prior deliveries was relevant in showing how Mr. Huskinson was able to identify Appellant as the man who had sold the marihuana to him. W.R.E. 404(b); *see also Johnson v. State,* 872 P.2d 93 (Wyo.1994).

While the evidence of the periodic drug transactions between Mr. Huskinson and Appellant was obviously prejudicial to Appellant, the probative value of the evidence justified its admission because it was a necessary part of the history of the charged crime. The other bad acts evidence was, therefore, admissible, and no violation of a clear and unequivocal rule of law occurred when it was admitted at the trial or when the prosecutor commented on it during his opening statement.

## B. Effective Assistance of Counsel

Appellant argues that his trial attorney did not provide him with effective assistance of counsel because (1) he failed to investigate Appellant's alibi and did not file a motion for a bill of particulars to determine the specific time when the offense was committed; (2) he

failed to preserve the record from the preliminary hearing; (3) he failed to conduct adequate *voir dire;* (4) he allowed the State to discuss Appellant's prior bad acts without objecting; (5) he failed to move for a judgment of acquittal at the close of the State's case; and (6) he failed to present a defense which showed the mathematical impossibility that Appellant committed the crime charged.

 The Sixth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution, guarantees a criminal defendant the right to have effective assistance of counsel. *Owen v. State,* 902 P.2d 190, 198 (Wyo.1995); *Bloomquist v. State,* 914 P.2d 812, 819 (Wyo. 1996). This Court follows the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in determining whether the assistance that a criminal defendant received from his counsel was ineffective. *Dickeson v. State,* 843 P.2d 606, 609 (Wyo.1992).

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

> *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984)....

> We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance, bearing in mind the function of counsel is to make the adversarial testing process work in every case. We do not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. "We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist [v. State],* 737 P.2d [336,] 342 [ (Wyo.1987) ] (citations omitted). The burden is upon the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy.

*Id.* (some citations omitted).

1. **"Defense counsel's failure to investigate [Appellant's] alibi and even speak to [Appellant's] alibi witnesses and then failing to move for a Bill of Particulars to narrow the time frame of the offense in question denied [Appellant] his right to effective assistance of counsel."**

With respect to an attorney's duty to investigate, we have stated:

> "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary....

> "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.... [W]hat investigation decisions are reasonable depends critically on such information."

*Frias v. State,* 722 P.2d 135, 145 (Wyo.1986) (quoting *Strickland,* 466 U.S. at 691, 104

S.Ct. at 2066–67). *See also McCoy v. State,* 886 P.2d 252, 255 (Wyo.1994).

▪ At the hearing on Appellant's motion for a new trial, Appellant's trial counsel was specifically questioned about why he did not pursue an alibi defense. The attorney explained that he did not pursue an alibi defense because the criminal information which charged Appellant simply stated that the crime had occurred "on or about September, 1994." He stated that, even with Appellant's witness list, it was impossible for Appellant to account for his whereabouts during the entire month. Additionally, Appellant listed his wife as one of his alibi witnesses, and his counsel felt that it would be risky to have her testify. The attorney was afraid that the wife's testimony could open the door to questioning by the State about a Colorado case in which Appellant was accused of cultivating marihuana.

Given this testimony, we conclude that Appellant's attorney acted in a reasonable manner when he determined that he did not need to contact Appellant's alibi witnesses. The attorney's trial strategy was sound.

▪ As a related matter, Appellant contends that his trial attorney should have filed a motion for a bill of particulars to pinpoint the time when the offense was committed. At the post-trial hearing, Appellant's attorney indicated that he did not file a bill of particulars because he believed that the lack of specificity in the State's charge worked to Appellant's advantage. Some evidence existed which indicated that there may have been a delivery in November in addition to the September delivery which was specified in the charging document. The attorney indicated that the lack of specificity in the charge played to Appellant's advantage because it highlighted the fact that the State could not pinpoint the precise date when the charged delivery occurred.

Appellant's attorney offered a valid explanation as to why he did not file a motion for a bill of particulars. The attorney's strategic decision was reasonable in light of the circumstances, and we will not second guess him on appeal. *See Owen,* 902 P.2d at 199.

**2. "DEFENSE COUNSEL'S FAILURE TO PRESERVE A COMPLETE RECORD, NAMELY THE PRELIMINARY HEARING TRANSCRIPT, DENIED [APPELLANT] HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."**

▪ The preliminary hearing was recorded on audio tapes. Unfortunately, the tapes were inaudible, and a transcript could not be produced. Appellant's trial counsel attempted to have the tapes professionally enhanced to improve their clarity but was not successful. Appellant claims that, if his attorney had taken appropriate measures to preserve the preliminary hearing testimony, the testimony could have been used to impeach Steve Rozier, a sergeant with the Gillette police department, because the officer's trial testimony was inconsistent with his preliminary hearing testimony. Appellant insists that the attorney should have requested that another preliminary hearing be held in order to preserve the record.

Appellant's exact argument is difficult to follow. He apparently contends that Officer Rozier could have been impeached because he did not discuss the November delivery at the preliminary hearing. Appellant asserts that the officer lied or recklessly disregarded the truth about the November delivery in a hearing in the Colorado case and that the judge in that case discovered the falsehood. He insists that, if the preliminary hearing transcript had been preserved, the attorney could have used it to impeach the officer without opening the door to further testimony about the Colorado case.

In reviewing the trial transcript, we discovered that Officer Rozier did testify at the trial about both the September and the November deliveries. Appellant's attorney acknowledged at the post-trial hearing that Officer Rozier did not discuss the November delivery at the preliminary hearing.

Officer Rozier's testimony was obviously more detailed at the trial than it was at the preliminary hearing. That does not mean, however, that his testimony was inconsistent. It is reasonable to assume that the testimony at the preliminary hearing focused on the September delivery since that was the delivery which was specifically included in the State's charge. Furthermore, Officer Rozi-

er's testimony that a delivery occurred in November was consistent with the evidence that Appellant had delivered marihuana to Mr. Huskinson every two or three months over a period of several years.

Appellant has not explained to this Court exactly how the preliminary hearing testimony was inconsistent with the trial testimony or how the preliminary hearing testimony could have been used to impeach the officer without opening the door to questions about the Colorado case. Appellant has, therefore, failed to meet his burden of proving that his counsel performed ineffectively when he failed to preserve the preliminary hearing transcript.

█ Appellant also argues that his attorney's failure to procure a recording or transcript from the preliminary hearing prejudiced his right of appeal. Appellant did not attempt to settle the record pursuant to W.R.A.P. 3.03. He cannot, therefore, complain that his right of appeal was prejudiced when he did not make an effort to correct the problem.

3. "DEFENSE COUNSEL'S FAILURE TO CONDUCT AN ADEQUATE *VOIR DIRE* DENIED [APPELLANT] HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

█ Through *voir dire*, a defendant may question the prospective jurors to determine whether they have biases or prejudices which would infringe on his right to have a fair trial. *Miller v. State*, 904 P.2d 344, 352 (Wyo.1995). *Voir dire* is intended to allow parties to determine whether any juror may be challenged for cause. *See Frias*, 722 P.2d at 139–40. Jurors may be dismissed for cause only upon a " 'provable and legally cognizable basis of partiality.' " *Schwenke v. State*, 768 P.2d 1031, 1034 (Wyo.1989) (quoting *Engberg v. State*, 686 P.2d 541, 549 n. 6 (Wyo.), *cert. denied*, 469 U.S. 1077, 105 S.Ct. 577, 83 L.Ed.2d 516 (1984)). *See also* WYO. STAT. § 7–11–105(a) (1995). "Because *voir dire* questioning techniques are diverse, any alleged *voir dire* error must be egregious and obvious in order to fall below the line of competence." *Arner v. State*, 872 P.2d 100, 105 (Wyo.1994).

In this case, the trial judge asked the members of the jury panel to introduce themselves. After the jurors had finished introducing themselves, the State's attorney questioned the panel. When it was his turn to examine the jury panel, Appellant's attorney acknowledged that the prosecution had already covered many of the questions that he had planned to ask, but he went on to address several questions to the jurors.

█ Appellant points to one instance where he believes that a challenge for cause was warranted. In that instance, the prospective juror stated that he associated with police officers because he was studying police science and that he considered police officers to be "very loyal, trustworthy people." That juror went on to state, however, that he was not biased. Consequently, no basis existed for Appellant's attorney to challenge him for cause. Appellant's attorney did, however, use one of his peremptory challenges to disqualify the juror.

█ The remainder of the answers to the questions did not suggest that the prospective jurors were biased and did not trigger the need for further questioning. Although his attorney's questioning of the jurors on *voir dire* was not extensive, it, coupled with the introductions and the State's questions, was sufficient for the attorney to utilize his peremptory challenges. Appellant has, therefore, failed to demonstrate that his attorney's performance in conducting *voir dire* was deficient or that he was prejudiced by his attorney's method of conducting *voir dire*. *See Arner*, 872 P.2d at 104–05.

4. "DEFENSE COUNSEL'S ALLOWING THE STATE TO BLATANTLY DISCUSS INADMISSIBLE PRIOR BAD ACTS OF [APPELLANT] WITHOUT ANY OBJECTION PRIOR TO TRIAL OR DURING THE TRIAL, OR MOTIONS FOR MISTRIAL DENIED [A]PPELLANT OF EFFECTIVE ASSISTANCE OF COUNSEL."

As we stated earlier in this opinion, the other bad acts evidence which was presented at the trial was admissible. Appellant's trial attorney did not, therefore, perform in a deficient manner by failing to object to its admission.

 As a related matter, Appellant argues that his attorney should have requested a limiting instruction after the evidence was admitted. Counsel may, as a matter of trial strategy, choose not to request a limiting instruction in order to avoid emphasizing the unfavorable evidence. *Sybert v. State,* 724 P.2d 463, 467 (Wyo.1986). One of the defenses employed by Appellant's attorney in this case involved challenging the credibility of Mr. Huskinson. An instruction limiting the scope of the other bad acts evidence may have given the impression that Appellant was trying to hide something with regard to the alleged prior deliveries to Mr. Huskinson. Such an inference may have given additional credibility to Mr. Huskinson's testimony. That would have been harmful to Appellant's defense; consequently, his attorney was justified in not requesting a limiting instruction.

5. **"DEFENSE COUNSEL'S FAILURE TO MOVE FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE WAS A FAILURE TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL, GIVEN THE INSUFFICIENCY OF THE EVIDENCE PRESENTED."**

 Appellant claims that a motion for a judgment of acquittal at the close of the State's case was warranted because the State did not present evidence which corroborated Mr. Huskinson's testimony.

"A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the *motion should not be granted.* This standard applies whether the supporting evidence is direct or circumstantial." (citations omitted) *Leppek v. State,* 636 P.2d 1117, 1119 (Wyo.1981).

*Apodaca v. State,* 796 P.2d 806, 807 (Wyo. 1990). *See also DeVries v. State,* 909 P.2d 977, 978 (Wyo.1996).

 Mr. Huskinson testified that Appellant had delivered one-quarter pound of marihuana to him in the Wal–Mart parking lot on or around September 1994. The parties stipulated before the trial that marihuana was recovered from Mr. Huskinson's home during the police search. Sufficient evidence, therefore, existed to establish all the elements of the charged crime, and the jury was left to determine whether the evidence was adequate to convict Appellant. A motion for a judgment of acquittal would *not* have been successful; therefore, Appellant's counsel did not perform in a deficient manner by failing to present such a motion to the trial court.

6. **"DEFENSE COUNSEL'S FAILURE TO PRESENT THE DEFENSE WHICH PROBABLY WOULD HAVE CHANGED THE OUTCOME OF THE TRIAL, THAT IS, THE MATHEMATICAL IMPOSSIBILITY THAT [APPELLANT] COMMITTED THE CRIME HE WAS CHARGED WITH, WAS HIGHLY PREJUDICIAL TO [APPELLANT] AND WAS A FAILURE TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL."**

 The theory of defense advocated by Appellant would have established that the amount of marihuana delivered by Appellant to Mr. Huskinson was not equal to the amount which had been consumed and sold by Mr. Huskinson and which had been seized in the police search. At the trial, Mr. Huskinson testified that he had received one-quarter pound (four ounces) of marihuana from Appellant in September 1994. The police seized approximately two ounces of marihuana from the Huskinson residence and another fifty grams (approximately two ounces) of marihuana from the juvenile. One of the police reports indicated that Mr. Huskinson had also sold some marihuana to a relative for $310. Appellant surmises that, for $310, Mr. Huskinson would have delivered approximately three ounces to the relative. Additionally, Appellant argues that, because the Huskinsons were heavy marihuana users, they undoubtedly consumed a significant portion of the marihuana allegedly delivered by Appellant in September 1994. Accordingly, Appellant maintains that a great deal more marihuana was accounted for by the police than Mr. Huskinson claims to have received from Appellant in the September delivery. He contends, therefore, that it was mathematically impossible for him to have committed the crime charged.

Appellant's argument relies on a number of unproven assumptions. He speculates about the amounts of marihuana which were consumed and sold by the Huskinsons. Further, Appellant completely ignores the fact that there were continuous drug transactions between him and Mr. Huskinson and that, when Mr. Huskinson received the September delivery, he may have had some marihuana left from prior deliveries. Since Appellant's "mathematical impossibility" argument is little more than speculation, we cannot fault his attorney for failing to pursue such a defense. Appellant has not, therefore, satisfied his burden of showing that his attorney's performance was deficient or that he was prejudiced by the performance.

## CONCLUSION

The evidence of Appellant's other bad acts was admissible, and Appellant received effective assistance of trial counsel. Appellant's conviction is, therefore,

Affirmed.