Deborah J. STURGIS, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–252.

Supreme Court of Wyoming.

Jan. 23, 1997.

Sylvia L. Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; and Donna D. Domonkos, Assistant Appellate Counsel, for Appellant.

\* Chief Justice at time of oral argument.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Michael P. Adams, Student Intern, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,\* and LEHMAN, JJ.

TAYLOR, Chief Justice.

On October 14, 1994, appellant and Bill Broderick were both patrons of the Buckhorn Bar in Laramie, Wyoming. During the early morning hours, Mr. Broderick was shot from behind outside his home and, in her defense, appellant accused him of rape. Unmoved by her claims of self-defense, a jury found appellant guilty of aggravated assault. Although the district court conducted a "*Dean* type" inquiry, appellant now complains she was victimized by the improper admission of prior bad acts evidence. Rejecting that argument and claims of prosecutorial misconduct, we affirm the conviction.

## I. ISSUES

Appellant, Deborah Sturgis (Sturgis), posits two issues on appeal:

*ISSUE 1*

The trial court abused its discretion when it admitted prior bad act evidence without a finding of specific purpose for the admissibility as required under *Dean v. State,* 865 P.2d 601 (Wyo.1993).

*ISSUE 2*

The appellant was denied a fair trial as guaranteed by the due process clauses of the United States and Wyoming Constitutions because of prosecutorial misconduct during the closing argument.

The State squarely joins Sturgis' arguments through its statement of the issues:

I. Did the trial court abuse its discretion in allowing the prosecution to present relevant evidence of the appellant's prior conduct pursuant to W.R.E. 404(b)?

II. Did comments made by the prosecutor during closing arguments constitute proper argument and reasonable conclusions based on the evidence?

## II. FACTS

By October 14, 1994, Sturgis was well known at the Buckhorn Bar in Laramie. On the evening of October 11, Sturgis caused some consternation when she produced a pistol hastening the departure of a paying customer. Turning her attentions to a part-time bar employee in his seventies, Sturgis suggested an assignation, threatening to kill him if he refused.

Unaware of the events which took place a few days beforehand, Bill Broderick (Broderick) felt flattered when Sturgis asked him to join her in a drink on October 14. Learning she was a stranger to Laramie, Broderick offered his couch for Sturgis to sleep on, also inviting the bartender over for a nightcap.

The bartender arrived at Broderick's home to witness Sturgis sitting astride Broderick's lap as he reached around her to play the piano. After the couple adjourned to the bedroom, however, the bartender observed Sturgis making a dramatic exit, stumbling out the front door before tumbling across the front lawn, spilling the contents of her purse.

Feeling out of place, the bartender sought to make his own quick exit only to be stymied by a car that refused to start. Seeking reconciliation, Broderick emerged to help gather the contents of Sturgis' purse while she ran back into the house to retrieve her pistol. When Sturgis returned, armed with her pistol, Broderick continued efforts to defuse the situation until she leveled her pistol at him. Desperately trying to start his car, the bartender shrewdly advised Broderick that the time had arrived to effect an orderly retreat.

As Broderick wisely withdrew, however, Sturgis opened fire from about fifteen feet behind, fracturing "the main bone of the left leg" and blowing part of that bone out through the exit wound. Convinced his assailant meant to finish the job, Broderick dragged himself into the house, bolted the door, then pulled himself out the back door

toward an all-night convenience store. True to her victim's expectations, Sturgis kicked down the front door, fired into the house, pursuing Broderick through the house and down the alley until confronted and apprehended by officers of the Laramie Police Department.

Prior to trial, Sturgis moved to exclude evidence concerning her mental state, including a narrative of her earlier foray into the Buckhorn Bar, arguing that "state of mind" evidence detailing her emotional difficulties lacked relevance to the crime charged. The district court agreed that much of the evidence offered by the prosecution was inadmissible. However, the district court did allow the jury to hear evidence concerning Sturgis' earlier visit to the Buckhorn Bar, subject to a limiting instruction, "for the very limited purpose of showing opportunity, intent, plan or absence of mistake by [Sturgis]."

Sturgis' theory of the case was that she had acted in necessary self-defense against a would-be sexual assailant. The jury rejected that notion and found her guilty of aggravated assault in violation of Wyo.Stat. § 6–2–502(a)(ii) and (b) (1988). This appeal timely followed.

## III. STANDARD OF REVIEW

 Decisions regarding the admission or exclusion of evidence are within the sound discretion of the trial court. *Taylor v. State*, 642 P.2d 1294, 1295 (Wyo.1982). We extend appellate deference to a trial court's determinations regarding the admissibility of uncharged misconduct evidence. *James v. State*, 888 P.2d 200, 203 (Wyo.1994). Only manifest abuse of discretion will precipitate reversal in such cases, and so long as a consistent and legitimate basis for the trial court's ruling has been articulated, we will not find an abuse of discretion. *Dean v. State*, 865 P.2d 601, 606 (Wyo.1993).

 We examine claims that a prosecutor has overstepped the bounds of permissible comment during closing by viewing the allegedly improper comment in the context of the entire closing argument. *Virgilio v. State*, 834 P.2d 1125, 1127 (Wyo.1992). If the

allegedly improper comments fail to draw a contemporaneous objection, reversible error can only be predicated upon "a substantial risk of a miscarriage of justice." *Dice v. State*, 825 P.2d 379, 384 (Wyo.1992).

## IV. DISCUSSION

### A. PRIOR BAD ACTS EVIDENCE

The law regarding admissibility of W.R.E. 404(b) (Rule 404(b)) evidence concerning prior bad acts has recently been redefined and clarified in *Vigil v. State*, 926 P.2d 351 (Wyo. 1996) and *Gunderson v. State*, 925 P.2d 1300 (Wyo.1996).[1] However, we concur with the parties that the five-part test for prior bad acts evidence articulated in *Bishop v. State*, 687 P.2d 242, 246 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985), as procedurally fine-tuned in *Dean*, 865 P.2d at 606, sets the appropriate threshold for admissibility of such evidence in this case. Using *Bishop* as our benchmark, we proceed with the caveat that our analysis, while critical to this appellant, may be of limited prospective application.

Sturgis takes issue with those purposes for which the district court admitted the evidence concerning her earlier adventures in the Buckhorn Bar. She derides a so-called "laundry list" of purposes given for admission of that evidence, i.e., "intent, plan, absence of mistake, and general state of mind." *Dean*, according to Sturgis, requires ascertainment of a singular purpose for the admission of such evidence, lest the appellate court be impermissibly handicapped in its efforts to determine the propriety of admitting prior bad acts evidence pursuant to Rule 404(b).

■ The purpose for which a party offers prior bad acts evidence is undeniably critical to ultimate admissibility under Rule 404(b). Rule 404(b) forbids the admission of prior bad acts evidence for the purposes of proving bad character or criminal propensity. *Sandy v. State*, 870 P.2d 352, 356 (Wyo.1994). Otherwise, jurors might be drawn into the infer-

ence that a bad act means a bad person, and a bad person means a guilty person. 1 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence*, § 106 at 584–85 (2nd ed. 1994). Equally unacceptable is a juror intent upon punishing because the other acts, alone, inspire the impression that punishment is warranted. *Kwallek v. State*, 596 P.2d 1372, 1378 (Wyo.1979).

Rule 404(b) offers a non-exclusive list of purposes for which prior bad acts evidence *may be admissible*, including several of those cited by the district court with regard to Sturgis' earlier visit to the Buckhorn Bar. *Gezzi v. State*, 780 P.2d 972, 974 (Wyo.1989). However, in *Bishop*, 687 P.2d at 246, we moved beyond facile efforts to shoe-horn prior bad acts into one or more of the purposes listed in Rule 404(b). Rather, the question of *purpose* is but one of five factors to be weighed by the district court in determining the propriety of admitting prior bad acts evidence pursuant to Rule 404(b). To facilitate that determination, the district court is vested with broad discretion in balancing the five factors. *Frenzel v. State*, 849 P.2d 741, 752 (Wyo.1993). We cannot, therefore, consider the *purpose* for which the district court admitted the questioned evidence without the necessary context afforded by careful review of the four other *Bishop* factors. The question to be answered here is whether the district court abused its discretion in weight and balance of the five *Bishop* factors.

■ Although a defense motion in limine precipitated the pretrial hearing which plumbed admissibility of Sturgis' prior bad acts in this case, the district court generally adhered to the procedures outlined in *Dean* for assessment of the *Bishop* factors, including consideration of probative value as countervailing the ever-present risk of prejudice (W.R.E.403), and iteration of a limiting instruction to the jury. Aided by those proceedings, our review of the *Bishop* factors yields the following conclusions:

---

1. In *Vigil*, 926 P.2d at 355–57, we adopted the four-part test outlined in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) and articulated in *United States v. Herndon*, 982 F.2d 1411, 1414–15 (10th Cir. 1992), *aff'd on appeal after remand*, 34 F.3d 1077, 1994 WL 478546 (10th Cir.1994). This test, however, is very similar to the *Bishop v. State*, 687 P.2d 242 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985) factors considered in the case before us.

1. " 'The extent to which the prosecution plainly, clearly and convincingly can prove the other [bad acts].' " *Garcia v. State,* 777 P.2d 1091, 1096 (Wyo.1989) (*quoting Bishop,* 687 P.2d at 246). Sturgis' earlier display of the pistol and expression of a willingness to use that pistol during flirtations with individual bar patrons were the subject of unrefuted eyewitness testimony.

2. " 'The remoteness in time of those [bad acts] from the charged offense.' " *Garcia,* 777 P.2d at 1096 (*quoting Bishop,* 687 P.2d at 246). Sturgis' prior bad acts precipitated her ejection from the Buckhorn Bar two days before her encounter with the victim which began in a remarkably similar fashion at the same location. Indeed, Sturgis' prior visit to the Buckhorn Bar " 'forms part of the history of the event [and] serves to enhance the natural development of the facts.' " *Crozier v. State,* 723 P.2d 42, 49 (Wyo.1986) (*quoting Commonwealth v. Evans,* 343 Pa.Super. 118, 494 A.2d 383, 390 (1985)). *See also Longfellow v. State,* 803 P.2d 848, 854 (Wyo.1990).

3. " 'The extent to which the evidence of other [bad acts] is introduced for a purpose sanctioned by W.R.E. 404(b).' " *Garcia,* 777 P.2d at 1096 (*quoting Bishop,* 687 P.2d at 246). Sturgis' earlier possession of a pistol and expression of a willingness to use it bear upon "intent, plan, [and] absence of mistake." Her suggestions of sexual liaisons were offered to refute the defense claim that Sturgis was the innocent (mistaken) victim of Broderick's unwanted sexual advances.

4. " 'The extent to which the element of the charged offense, that the evidence is introduced to prove, is actually at issue.' " *Garcia,* 777 P.2d at 1096 (*quoting Bishop,* 687 P.2d at 246). Faced with overwhelming physical evidence of her offense, Sturgis may have been obliged to make her state of mind the focal point at trial by claiming self-defense. Having made that choice, however, she is poorly situated to suggest that "intent, plan, absence of mistake, and general state of mind," were not squarely at issue.[2]

5. " 'The extent to which the prosecution has a substantial need for the probative value of the evidence of other [bad acts].' " *Garcia,* 777 P.2d at 1096 (*quoting Bishop,* 687 P.2d at 246). Sturgis' theory of self-defense obliged the State to make some showing that the events of early October 14, 1994 neither occurred in a vacuum nor were an anomalous response precipitated by the victim's alleged sudden and untoward advances. *James,* 888 P.2d at 204.

Sturgis correctly cautions us about the dangers inherent in a sort of "categorical" admission of prior bad acts evidence when the validity of no single purpose for admission under Rule 404(b) has actually been demonstrated. However, the issue of purpose constitutes but one of the five *Bishop* factors, each representing an analytical prong helpful in measuring full compliance with Rule 404(b). *Jackson v. State,* 891 P.2d 70, 76 (Wyo.1995). Retracing the district court's employment of that tool, we find no faulty workmanship, let alone anything approaching the abuse of discretion necessary to disturb the decision admitting evidence of Sturgis' prior behavior in the Buckhorn Bar. We are convinced by the precision with which each admissible purpose is connected with the facts of this case and the considerable overlap identified by the State and accepted by the district court. At the same time, we are unmoved by Sturgis' contention that Rule 404(b) analysis requires pinpointing of but one purpose for admission of prior bad acts evidence. *See, e.g., United States v. Freeman,* 514 F.2d 1184, 1190 (10th Cir. 1975).

## B. PROSECUTORIAL MISCONDUCT IN CLOSING

Sturgis identifies three instances of alleged prosecutorial excess during closing argument. None were the subject of contemporaneous objection, obliging Sturgis to show plain error in order to establish reversible prosecutorial misconduct. *Warhawk v. State,* 849 P.2d 1326, 1327 (Wyo.1993). This

---

2. The elemental objective of this evidence is to show *mens rea* through indices of "intent, plan, [and] absence of mistake." Such purpose is readily distinguishable from the attempts to demonstrate "character" and a propensity to act in conformity therewith which are given short shrift by Rule 404 and *Kwallek,* 596 P.2d at 1377–79.

requires clear record reflection of an unequivocal rule of law which has been breached in a manner that tends to subvert the fundamental fairness of the trial process. *Barnes v. State*, 642 P.2d 1263, 1265 (Wyo. 1982).

The record is clear enough in reflecting each of those statements alleged to be error. Equally apparent, though, is the larger context which serves to trivialize each fragmented and isolated passage cited as violative of law. *Smith v. State*, 880 P.2d 573, 574 (Wyo. 1994). Although availing herself of her absolute right not to take the witness stand at trial, Sturgis found an ingenious instrumentality for circumvention of the resultant failure to communicate. She "spoke" to the jury through evidentiary submission of her tape recorded statement to the police. That ploy effectively avoided the inconvenience of cross-examination while empowering trial counsel to claim that his client *had spoken directly* to the jury through her taped statement. To one degree or another, virtually all of the prosecutorial comments eventually identified as error by Sturgis came in response to Sturgis' creative method of sharing her viewpoint with the jury.

■ First, in response to Sturgis' taped statement, the prosecutor argued that the bartender was truthful in his testimony that no struggle had taken place between Sturgis and Broderick:

> Where is the sexual assault? Was anyone's clothes torn, anyone's genitalia exposed? Any sexual threats made? Any submissions against one's will? No. In fact [Sturgis] was asked that in the interview, and she said no. Not at all.
>
> Now, can we believe that [Sturgis]—can we believe [Sturgis], that all these struggles were taking place? [The bartender] told you the truth. [He] told you that there weren't any struggles. You recall his testimony, and you're the sole judges of credibility, and you all listened to [him] testify.

In a different context, "[The bartender] told you the truth" might be viewed as an impermissible prosecutorial assertion of a personal belief as to a matter in issue. *Browder v. State*, 639 P.2d 889, 893 (Wyo.1982). Here,

however, it is clear that the prosecutor was engaged in an evaluative discussion of the evidence, being "careful to make it clear that the decision was in the hands of the jury." *Barela v. State*, 787 P.2d 82, 84 (Wyo.1990). No rule of law was breached.

■ At first blush, greater promise might be seen in Sturgis' attack upon the following prosecutorial statement, particularly in view of the fundamental rationale underlying Rule 404(b):

> But the question is, can someone who acts like that [Sturgis' earlier adventures in the Buckhorn Bar] also shoot somebody as they're walking away at 20, 25 feet away? Can that happen? I submit yes, and that's what this evidence suggests.

This has the disturbing ring of a prosecutor inviting the jurors to ignore the district court's limiting instruction regarding Sturgis' earlier visit to the Buckhorn Bar so that they might make precisely that use of the prior bad acts evidence which Rule 404 expressly and repeatedly forbids. Such an interpretation is only viable if we ignore the admonition to " 'consider the entire closing argument and do not take individual sentences or phrases out of context.' " *Fales v. State*, 908 P.2d 404, 410 (Wyo.1995) (*quoting Smith*, 880 P.2d at 574).

The prosecutor's statement was made in order to rebut the following defense claim:

> [T]he State has a lot of Jell-o, and what they attempt to do when their case is weak is attempt to prove that my client was a bad woman; that she was some kind of floozie on October the 11th, and she somehow deserved it, so they put in all of that bad evidence so they can show you that.
>
> Well, ladies and gentlemen, I think that we have gone too far in our society, and I don't think we buy that stuff anymore, that just because a female has made a mistake in the past, that does not mean that she can never be the victim of a sexual assault.

In the face of what defense counsel said about who may or may not be the victim of a sexual assault, the prosecutor's rebuttal necessarily had to focus on neutralization of the prior bad acts evidence rather than its exploitation or misuse:

Now, they say, well, you know, the prosecution masses all this bad evidence about * * * Sturgis and bad in the bar, we want to say, well, she is bad there, so she somehow deserved this or deserved what she got. The truth wouldn't be—couldn't be further from that, ladies and gentlemen. Can someone who acted like she did be the victim of a sexual assault? You bet. You bet she can. In a heartbeat. And we would stand by that, if the evidence supported it.

But the question is, can someone who acts like that also shoot somebody as they're walking away at 20, 25 feet away? Can that happen? I submit yes, and that's what this evidence suggests.

Taken in context, the prosecutor actually implores the jury to ignore the prior bad acts evidence or, at most, to regard it as neutral on the issue of whether or not Sturgis could suddenly find *herself* the victim of some unspeakable act. Taken in context, the prosecutor's remarks were proper argumentation evincing no effort to exploit the prior bad acts evidence.

█ Finally, Sturgis complains that the prosecutor precipitated reversible error by impermissibly commenting upon her silence in his rebuttal argument. Such commentary, if made with respect to Sturgis' silence after her arrest or after she had been advised of her constitutional right to remain silent, would amount to plain error and prejudicial error per se. *Summers v. State*, 725 P.2d 1033, 1048–49 (Wyo.1986). However, when Sturgis transformed the contents of her own statement to police into Defense Exhibit K, exploiting contents of that statement as the centerpiece of her closing argument, her own attorney correctly concluded that she had, indeed, "talked to" the jury.

The statement contained numerous and inconsistent descriptions of precisely where Sturgis and her victim were physically located at the time of the shooting. However, by selective utilization of other portions of that statement, Sturgis' defense counsel was able to suggest an alternative "reconstruction" of the shooting—one in which the victim was approaching Sturgis, at close range, rather than retreating. In his rebuttal argument, the prosecutor simply clarified Sturgis' failure, at any point in her lengthy and voluntary statement, to give a version of the shooting and the location of the principals which came close to matching her attorney's "reconstruction."

Sturgis does not allege, nor does the record reflect, any infringement by the police on her right to remain silent during that initial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Sturgis does not allege, nor does the record reflect, any prosecutorial exploitation in closing argument or otherwise of Sturgis' efforts to vindicate her right to silence—such as those which ultimately summoned reversal in *Tortolito v. State*, 901 P.2d 387, 391 (Wyo. 1995). Finally, Sturgis does not allege, nor does the record reflect, prosecutorial comment of any sort on her decision *not* to testify at trial. *Jerskey v. State*, 546 P.2d 173, 176 n. 6 (Wyo.1976).

Having clearly renounced her right to remain silent in the face of police interrogation only to publish the product of that renunciation to the jury, Sturgis builds upon the premise that *only* her defense team should be permitted to argue to the jury with respect to her statement—its contents and omissions. A defendant may not exploit his or her voluntary and informed responses to official interrogation without understanding that the door swings both ways, affording the prosecution a similar opportunity to make some comment over what she said or neglected to say. The prosecutor did no more than argue from evidence which Sturgis, herself, had chosen to put before the jury.

No effort was made by Sturgis to invoke her right to silence prior to trial, and no comments of the prosecutor either suggested such efforts or endeavored to make improper use of such implications. Similarly, no infringement can be found upon Sturgis' exercise of her constitutional right not to testify at trial.

## V. CONCLUSION

Sturgis enjoyed vigorous representation by exceptional trial counsel and scrupulous stewardship of her right to a fundamentally fair trial. We affirm the district court's judgment and order of sentencing.