Walter RODRIGUEZ, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Sylvia Lee Hackl, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Diane M. Lozano, Assistant Appellate Counsel.

No. 96–293.

Supreme Court of Wyoming.

June 18, 1998

Sylvia Lee Hackl, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Diane M. Lozano, Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

THOMAS, Justice.

The initial and significant claim of error in this case is that error of constitutional magnitude occurred when the prosecution failed to disclose exculpatory and impeachment evidence prior to the trial of Walter Rodriguez (Rodriguez) on two counts of delivery of marijuana. Additional claims of error are asserted concerning the improper introduction of evidence of prior bad acts; prosecutorial misconduct in closing argument; and the insufficiency of the evidence to support a conviction on either count of the information. Our review of the record, in the light of applicable law, demonstrates that none of Rodriguez' claims of error are valid. The Judgment and Sentence entered by the district court must be affirmed.

In the Brief of the Appellant, filed on behalf of Rodriguez, the issues are identified as:

ISSUE I

Whether the appellant was denied his constitutional right to a fair trial when the State failed to disclose exculpatory and impeachment evidence.

ISSUE II

Whether the trial court erred when it permitted the State to use prior bad act evidence against the appellant in order to obtain a conviction.

ISSUE III

Whether there was insufficient evidence to convict the appellant on either of the two counts of delivery of a controlled substance under W.S. § 35–7–1031(a)(ii).

ISSUE IV

Whether the Appellant was denied a fair trial as guaranteed by the due process clauses of the United States and Wyoming constitutions because of prosecutorial misconduct in closing argument[.]

In the Brief of Appellee, filed by the State of Wyoming, the issues are stated in this way:

I. Was there sufficient evidence presented at trial to support Appellant's convictions?

II. Did the State fail to disclose potential impeachment material so as to deny Appellant a fair trial?

III. Did the district court abuse its discretion in admitting evidence of appellant's prior drug activities?

The material factual events in this case began on January 3, 1996, when two officers went to the home of James and Donna Holbrook seeking to execute a warrant for the arrest of Donna Holbrook. She was not home, but her husband, James Holbrook, agreed to permit the officers to search their home. In the course of that search, the officers found marijuana, and James Holbrook then returned to the station with the officers. Faced with potential charges relating to controlled substances, and hoping to assist his wife in connection with her criminal prosecution, Holbrook decided to cooperate with the law enforcement officers.

Holbrook advised the officers that he and his wife had been engaged in the sale of marijuana from their home for approximately six months. He said that the marijuana was supplied by Rodriguez at a price of $1,200

per pound. Holbrook explained that normally Rodriguez made unannounced deliveries of marijuana in one pound packages. Rodriguez usually "fronted" the marijuana to Holbrook, who then would sell it in smaller quantities, ultimately using the proceeds of those sales to pay the $1,200 owed Rodriguez. Holbrook told the officers that the 315 grams of marijuana they had seized from his home was what was left over from a one pound delivery that Rodriguez made on December 26th or 27th, 1995, and that he still owed Rodriguez $920 for that pound of marijuana.

Holbrook agreed to become an informant for the Cheyenne Police Department and the Department of Criminal Investigation (DCI). Pursuing this arrangement, Holbrook notified the officers on January 6, 1996, that Rodriguez would be coming by on that day to pick up the $920 due to him. The law enforcement officers then took $920 in pre-recorded buy money to Holbrook's residence, and, with the assistance of other officers, they set up a surveillance of the area. Holbrook's home was searched for drugs, and none were found. After several hours of waiting, when Rodriguez still had not appeared, this surveillance was terminated. Fifteen minutes later, Holbrook telephoned to say that Rodriguez had delivered another pound of marijuana. The officers returned to Holbrook's residence where they recovered one pound of marijuana contained in a plastic ziplock bag. As was true with the December delivery, according to Holbrook, this marijuana was "fronted" to Holbrook, and no money changed hands at the time of delivery.

On January 8, 1996, Holbrook telephoned Rodriguez to set up a payment of the $920 still owed for the December delivery. In that call, which was recorded, Rodriguez agreed to meet with Holbrook at the Burger King on the South Greeley Highway. Before he left his home, Holbrook was fitted with a wireless transmitter, and he was furnished with $920 in pre-recorded buy money. The officers also searched Holbrook's person and his truck for drugs or other money, and none was found.

Holbrook went to the Burger King where he met with Rodriguez who arrived in a black Chevy blazer. The entire transaction between Holbrook and Rodriguez was observed by law enforcement officers. In the course of that meeting, Holbrook gave Rodriguez the $920 in buy money. After Rodriguez left the Burger King, Holbrook drove to the Town & County parking lot where he met with a DCI agent who searched for the presence of drugs or money. Again, no drugs or money was found.

On January 17, 1996, Holbrook made another recorded telephone call to Rodriguez, and arranged to meet him at the Burger King again. As before, Holbrook was searched for drugs or other monies; fitted with a wireless transmitter; and provided $500 in pre-recorded money. Rodriguez drove his black Chevy blazer to the Burger King. In the course of this meeting, Holbrook gave Rodriguez $500 as payment toward the amount due for the marijuana delivered on January 6, 1996, and he made arrangements for payment of the remaining balance of $700, as well as for the purchase of additional marijuana. Holbrook and Rodriguez again were under constant observation by law enforcement officers. Holbrook left the meeting and drove to the Town & Country parking lot where he met with a DCI agent who searched for the presence of drugs or other money. As before, none was found.

On January 19, 1996, Holbrook made his final recorded call to Rodriguez, and they again agreed to meet at the Burger King. Holbrook was searched; fitted with a wireless transmitter; and provided with $5,000 in pre-recorded money. Law enforcement officers and video equipment were surreptitiously placed so that the transaction could be observed. Rodriguez arrived at the Burger King at about 11:00 a.m., and in the course of the meeting, Holbrook gave Rodriguez $700 in pre-recorded money. He also negotiated the purchase of two to three more pounds of marijuana. It was agreed that Rodriguez would deliver the marijuana to Holbrook around noon at the Burger King. After Rodriguez left, Holbrook went to the Town & Country parking lot. He was met by a DCI agent, who took him to the DCI office to

await the noon meeting. In accordance with the usual practice, Holbrook was searched for the presence of drugs or other monies. The officers anticipated that the noon buy would proceed as planned, and arrangements were made to arrest Rodriguez on an arrest warrant that had been secured based upon information about the earlier deliveries. Holbrook and the officers returned to the Burger King to wait for Rodriguez. Rodriguez appeared about noon, but he told Holbrook he did not have the marijuana with him and would need to pick it up. Rodriguez was arrested at that time. No drugs or buy money was found on his person or in his vehicle.

After he was arrested, Rodriguez agreed that the officers could search his residence. At the home, the officers also obtained the consent of Rodriguez' fiancee to conduct a search of the premises. While the officers were there, Rodriguez' brother and a friend arrived. The officers searched them and recovered two Western Union money orders, totaling $1,600 from the brother. On the friend, the officers discovered $1,200 of the pre-recorded buy money; the $500 from the January 17th transaction and the $700 from the January 19th meeting. No drugs or any other buy money were recovered from Rodriguez' residence by the officers.

In addition to Holbrook's cooperation, the State had the advantage of cooperation by two other informants. Aaron Slutsky, charged with delivery of marijuana, agreed to work with the United States Attorney and DCI agents. He advised that Rodriguez had been his source of marijuana for approximately three years. He told the authorities about a variety of subplots and machinations with Rodriguez during that time. He explained that Rodriguez usually would deliver one pound packages at a price of $1,200 per pound. Slutsky said that these deliveries were unannounced and the marijuana was "fronted" by Rodriguez. Slutsky stated that Rodriguez on occasion would drop off additional marijuana to be held until Rodriguez returned for it. These occasions occurred between Thanksgiving of 1995 and mid-January of 1996.

Another informant, Matt Duran, was incarcerated for violation of probation during January of 1996. Duran met Rodriguez while in jail, and Duran informed the police, providing a written statement, that Rodriguez admitted to him that he had been dealing a lot of drugs in Cheyenne. Two months later, in April of 1996, Duran attempted a controlled buy of marijuana from Rodriguez.

Rodriguez was charged with two felony counts of delivery of a controlled substance. The counts related to the December 26, 1995, and the January 6, 1996, deliveries to Holbrook. Rodriguez entered pleas of not guilty to both counts. Prior to trial, both Rodriguez and the State filed numerous notices and motions, including a discovery motion filed by Rodriguez on May 21, 1996; a certificate of discovery filed by the State on May 13, 1996, in which it was certified that the entire criminal file of the State was open and available to defense counsel for inspection and copying; and a notice of intent by the State to introduce evidence of previous drug dealings with Holbrook and Slutsky to show course of conduct, identity, scheme, and modus operandi pursuant to WYO. R. EVID. 404(b). A motion hearing was conducted on May 24, 1996, and the district court ruled that evidence of other drug activity was relevant to the charges against Rodriguez. In addition, the court found that the evidence was not unfairly prejudicial and that it was admissible for the limited purpose of showing course of conduct.

Rodriguez' trial began on June 3, 1996, and at the close of the State's case, Rodriguez moved for judgment of acquittal, which was denied by the trial court. Rodriguez also moved for a mistrial complaining that he had not been timely provided with information relating to the attempted drug buy by Duran; a letter from a former deputy district attorney to the judge regarding Duran's pending probation revocation; and photographs that depicted items recovered during the search of Aaron Slutsky's business and his business partner's residence, conducted on January 19, 1996. After hearing arguments by counsel, the court denied the motion, ruling that the evidence was collateral impeachment evidence and was not "constitu-

tionally" material. The trial court did, however, offer defense counsel significant leeway with the witnesses and the introduction of this evidence. Further, defense counsel was asked how much time would be needed to review the evidence, and no request for a continuance was submitted.

The trial lasted three days, and the jury found Rodriguez guilty on both counts of delivery of a controlled substance. He was sentenced to concurrent seven to nine year terms in the Wyoming State Penitentiary. He appeals from the Judgment and Sentence filed on August 27, 1996.

Rodriguez' first and main contention is that the State violated its duty to disclose exculpatory and material evidence as required by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (U.S.Md. 1963). Rodriguez contends that this resulted in a denial of his right to a fair trial. In *Relish v. State*, 860 P.2d 455 (Wyo.1993), we explained that the *Brady* rule is not a rule of discovery, but is intended to protect a defendant's right to a fair trial under the due process clause of the Constitution of the United States. We there articulated this proposition:

> In order to establish a *Brady* violation, Relish must prove: (1) suppression of evidence by the prosecution; (2) that the evidence would have been favorable to him; and (3) that the evidence is material.

*Relish v. State*, 860 P.2d at 458–59.

The burden of establishing the claim of a *Brady* violation, that is the denial of constitutionally material evidence, and supporting that denial by the record is imposed on Rodriguez. *Roderick v. State*, 858 P.2d 538, 544 (Wyo.1993). Similar analyses have consistently been provided by this Court over the years. *Spencer v. State*, 925 P.2d 994 (Wyo. 1996); *Young v. State*, 849 P.2d 754 (Wyo. 1993); *Gale v. State*, 792 P.2d 570 (Wyo. 1990); *State ex rel. Hopkinson v. District Court, Teton County*, 696 P.2d 54 (Wyo. 1985); *Pote v. State*, 695 P.2d 617 (Wyo. 1985); *Wheeler v. State*, 691 P.2d 599 (Wyo. 1984); *Hopkinson v. State*, 679 P.2d 1008 (Wyo.1984); and *Dodge v. State*, 562 P.2d 303 (Wyo.1977).

The first challenge with respect to the failure to disclose relates to the evidence of the alleged failed drug buy by Duran. Rodriguez contends that information was valuable impeachment evidence because it would have undermined Duran's credibility and his direct testimony in the State's case in chief concerning the "jail house confession." Rodriguez also argues that evidence of yet another failed drug buy would have been favorable to his defense.

The second item of evidence that Rodriguez claims the prosecutor failed to disclose is a letter delivered April 18, 1996, from a former deputy district attorney to the trial judge. The letter concerned Duran's pending probation revocation, and the district judge furnished that letter to both the prosecutor and the defendant at the close of the State's case in chief. Rodriguez' argument with respect to the letter is that it also was critical impeachment evidence on Duran's credibility because it would have contradicted his testimony that he had not been promised any deal in exchange for his cooperation with law enforcement. Rodriguez believes that Duran was promised leniency in exchange for his cooperation and testimony in the Rodriguez case. The record shows only that the letter explained that Duran had a probation revocation hearing postponed until after the trial date, and further that it was likely if he worked with the police they would recommend that the court be lenient with respect to his probation revocation.

The third piece of evidence that is the subject of Rodriguez' complaint is the photographs of drug evidence recovered when the police searched Slutsky's business. Rodriguez asserts that the pictures would have been used as impeachment evidence against Slutsky. The record discloses that Rodriguez' counsel had access to the prosecutor's entire criminal file for approximately three weeks prior to trial. The file contained detailed information and documentation about the search of Slutsky's business, including notice that photographs had been taken.

It is clear from the record that all of the evidence as to which Rodriguez asserts error had come to light by the close of the State's evidence at trial. Rodriguez' claim is not one

of nondisclosure, but of late disclosure. At the close of the State's evidence, the trial court denied motions for mistrial submitted by Rodriguez and ruled that the evidence was not constitutionally material exculpatory evidence under *Brady*. The trial judge did agree, however, to grant Rodriguez broad latitude in introducing the evidence in his case in chief. Furthermore, although the judge asked defense counsel how long he might need to review the new evidence, Rodriguez did not seek any particular time or a continuance. It is clear that Rodriguez had full opportunity to use at the trial all of the evidence about which he complains. He chose not to use all of this evidence, and his complaint of error on appeal is somewhat ingenuous.

We agree with the decision of the trial court. Whether there was in fact suppression of evidence is somewhat questionable. In any event, it was known to Rodriguez during the course of the trial. Had it been used, the product of the jury's deliberation would have resolved the question of its materiality as to guilt. The fact that Rodriguez refrained from using any of it appears to constitute a concession on his part that it was not material with respect to guilt. In this case there was no suppression of evidence in the State's possession favorable to the accused and material to guilt. We hold Rodriguez was not denied his constitutional right to a fair trial.

As his second issue on appeal, Rodriguez presents a claim of error in permitting the State to introduce evidence of drug activities other than the two charged incidents, pursuant to WYO. R. EVID. 404(b). Specifically, Rodriguez points to: (1) testimony by Holbrook that Rodriguez delivered ten to twelve pounds of marijuana, at a price of $1,200 per pound, to him between July 1995 and January 1996; (2) testimony by Holbrook that the deliveries were made in a blue-black Chevrolet blazer, the same vehicle used with respect to the charged counts; (3) testimony by Holbrook and Slutsky that Rodriguez "fronted" the drugs and made later unannounced visits to collect payment; (4) testimony by Slutsky that Rodriguez over a three year period of time had delivered one pound packages of marijuana to him at the volume of two pounds per month; (5) Slutsky's testimony that Rodriguez delivered two to four pounds of marijuana to him in one pound packages at a cost of $1,200 per pound between Thanksgiving 1995 and January 1996; (6) testimony by Slutsky that he saw Rodriguez in his Chevrolet blazer with marijuana approximately ten times in March of 1995; and (7) testimony by Slutsky that he traveled to Mexico with Rodriguez to secure marijuana at Rodriguez' family lands and that Slutsky had modified his truck to get the marijuana across the border, but that he returned to the United States without Rodriguez or the marijuana. Rodriguez contends that this evidence was not relevant; that it was more prejudicial than probative; and that it was used contrary to the provision of WYO. R. EVID. 404(b) to show propensity to commit the crimes charged. Rodriguez also complains that this error was compounded because the prosecutor made improper references to the evidence in his closing arguments, and as a result, he was denied his right to a fair trial.

We have stated this standard to be applied in reviewing claims of error under WYO. R. EVID. 404(b):

> Decisions regarding the admission or exclusion of evidence are within the sound discretion of the trial court. We extend appellate deference to a trial court's determinations regarding the admissibility of uncharged misconduct evidence. Only manifest abuse of discretion will precipitate reversal in such cases, and so long as a consistent and legitimate basis for the trial court's ruling has been articulated, we will not find an abuse of discretion.

*Sturgis v. State*, 932 P.2d 199, 201 (Wyo. 1997) (citations omitted), *followed by, Johnson v. State*, 936 P.2d 458, 462 (Wyo.1997). In testing the trial court's ruling, we recently adopted a four factor standard for determining admissibility pursuant to WYO. R. EVID. 404(b), in *Vigil v. State*, 926 P.2d 351, 357 (Wyo.1996), where we stated that the evidence is admissible if:

> 1) the evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not

substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

In accordance with *Dean v. State*, 865 P.2d 601 (Wyo.1993), which represented the law at the time, the trial judge held a hearing to determine the admissibility of the evidence of prior bad acts. The court listened to evidence, entertained arguments by counsel, and considered the evidence in accordance with the factors set forth in *Dean.* In careful and well reasoned findings, the trial judge determined that the evidence was probative on the issue of delivery; that it was not unfairly prejudicial; and that it was admissible to demonstrate a course of conduct on the part of Rodriguez.

■ We are in complete accord with the decision of the trial court that the evidence of Rodriguez' prior drug activities was not submitted for the sole purpose of showing his bad character or his predisposition to commit the crimes charged. The evidence was relevant to show course of conduct, which is a proper purpose under WYO. R. EVID. 404(b). *E.g., Brown v. State*, 817 P.2d 429 (Wyo.1991); *Makinen v. State*, 737 P.2d 345 (Wyo.1987); *Scadden v. State*, 732 P.2d 1036 (Wyo.1987); *Crozier v. State*, 723 P.2d 42, 49 (Wyo.1986); and *Vasquez v. State*, 623 P.2d 1205 (Wyo.1981).

While Rodriguez submits the usual argument that evidence of his other drug activities is not relevant to the two charges of delivery, the trial court pointed out that Rodriguez by his pleas had denied his involvement in the charged crimes. Furthermore, the judge was aware that the prosecution did not have any recording or surveillance of the actual deliveries that were charged. The judge concluded that, given these factors, the evidence was relevant to counter Rodriguez' denial of his involvement and to corroborate the testimony of the informant. We hold that this evidence of prior drug activities demonstrated a pattern, a course of conduct, with respect to the way in which he conducted his drug business and directly related to the issue of whether he delivered marijuana to Holbrook on the dates charged in the information.

■ As to the balancing factor in the court's decision, the State contends that the probative value of the prior bad acts evidence clearly outweighs its prejudicial effect. Rodriguez contends to the contrary. In resolving this question, the court carefully weighed a number of factors. First, the trial court looked to the reprehensible nature of the prior bad acts and found that the acts were no worse than the crimes charged. Second, the court concluded that there was no sympathy for a victim which could sway the jury. The judge did agree with Rodriguez that the prior bad acts and his charged crimes were very similar and therefore a danger existed that the jury could think that "if he did it once, he probably did it again." As a fourth factor, the judge noted that the prior acts were no more serious than the charged offense, so there was no danger that the defendant would be placed in an additional unfavorable light. The trial judge also decided that while these prior bad acts evidenced bad character, the evidence is "more probative on the legitimate inference that is to be drawn that we have a continuum here of course of conduct." Finally, the judge looked at the fact that Rodriguez had not been convicted for any prior crimes and that some times a jury might be tempted to punish a defendant if they think he has escaped punishment in the past. The judge decided that in Rodriguez' case, the argument was only speculative. On balance and after weighing all the factors, the trial judge permitted the prior bad acts to come into evidence.

■ On appeal, Rodriguez complains that the trial court did not give a limiting instruction to the jury with respect to the proper use of this prior bad acts evidence. The record demonstrates that no objection was posed by the defense to the jury instruction, and this argument is not available on appeal. In the absence of a request for an instruction with respect to the limited use of the prior bad acts evidence, or some objection to the instructions given, no claim of error can be advanced on appeal. We hold that the trial judge articulated a consistent and legitimate

basis for his ruling and that no abuse of discretion was committed under either the *Vigil* standard or the prior *Dean* standard. There was no error in the admission of this evidence.

In another argument related to the admission of the evidence of prior bad acts, Rodriguez contends that prosecutorial misconduct occurred in the closing argument. He asserts that the misconduct by the prosecutor denied him his right to a fair trial. It is Rodriguez' contention that the prosecutor improperly told the jury that it could convict him based upon the evidence of his prior criminal activities. The specific statements that Rodriguez finds objectionable are:

> What are they talking about ? The same thing. The same drug. The same defendant.
>
> \* \* \*
>
> Admittedly, we don't have the controlled monitor-wired delivery of drugs. That's the perfect world. That would be great. But does that mean that there is any reasonable doubt—reasonable doubt that the stuff wasn't delivered? Aaron's [Slutsky] been doing it for three years, getting it from this defendant over here. Mr. Holbrook, for six months. Getting it for six months from this defendant over here.
>
> Where is it coming from, other than him?

Since no objection was posed at trial to the arguments by the prosecutor, we can find reversible error only if there is "a substantial risk of a miscarriage of justice." *Sturgis v. State*, 932 P.2d at 202; *Dice v. State*, 825 P.2d 379, 384 (Wyo.1992). Moreover, when there is a claim that the prosecutor has overstepped the bounds of permissible comment in closing argument, we review those comments as a part of the entire closing argument, and do not read particular sentences or phrases out of their context. *Sturgis*, 932 P.2d at 201; *Virgilio v. State*, 834 P.2d 1125, 1127 (Wyo.1992). When the prosecutor's comments are examined in the context of his entire argument, they are based upon the evidence presented at trial. The prosecutor did not improperly attempt to convince the jury that Rodriguez should be convicted solely because of his character or propensities for criminal conduct. The statements by the prosecutor pointed to reasonable inferences to be drawn from the evidence. They did not transgress any rule of law, and they were not so flagrant as to undermine the fairness of the trial.

The last issue raised by Rodriguez is that the State failed to present sufficient evidence to sustain his conviction of either count. He argues that the evidence was not adequate to establish the delivery of a controlled substance beyond a reasonable doubt. In his argument, Rodriguez points to the absence of physical evidence and the obvious incentive that Holbrook may have had to lie. Rodriguez' claim of error must be considered under our standard for reviewing the sufficiency of the evidence which is:

> The appellate test for sufficiency of evidence is whether a rational trier of fact could have been sufficiently armed by the evidence to find the essential elements of the offense beyond a reasonable doubt. In assessing that issue, we view the evidence in a light most favorable to the state, affording them the benefit of all reasonable inferences to be drawn therefrom. It is not our task, let alone our place, to reweigh the evidence or reexamine the credibility of the witnesses.

*Curl v. State*, 898 P.2d 369, 375 (Wyo.1995) (citations omitted), *followed by, Daniel v. State*, 923 P.2d 728, 737–38 (Wyo.1996).

The State's position is that Rodriguez failed to preserve his claim of lack of sufficient evidence when he failed to renew his motion for a directed verdict at the close of all the evidence. In the absence of the renewal of the motion for directed verdict, our review is limited to a plain error analysis. *Trujillo v. State*, 880 P.2d 575, 578 (Wyo. 1994). The record is clear as to what evidence was presented at trial. From that evidence, a rational trier of fact could have concluded beyond a reasonable doubt that Rodriguez delivered a controlled substance to Holbrook on December 26, 1995, and again on January 6, 1996. We acknowledge that most of the evidence came from the testimony of the informant Holbrook, but the evaluation of the credibility of this witness was

clearly within the province of the jury. Holbrook's testimony does not stand alone because the evidence regarding Rodriguez' "course of conduct" in the drug business also created a legitimate inference that Holbrook was telling the truth and that Rodriguez had made the deliveries to him. Under the circumstances, in light of the plain error analysis, there is no way to conclude that a clear rule of law was transgressed in a clear and unequivocal way. The evidence was sufficient to justify a rational finding by the jury that Rodriguez was guilty on both counts charged in the information.

The Judgment and Sentence entered in the district court is affirmed.