James Bryan HELM, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nos. 99–21, 99–22, 99–23.

Supreme Court of Wyoming.

March 24, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Michael Dinnerstein, Assistant Appellate Counsel.*

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and James L. Radda, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

LEHMAN, Chief Justice.

James Bryan Helm (Helm) appeals from his convictions for forgery and obtaining property by false pretenses. He claims he was denied his constitutional rights to due process and a fair trial because the trial court refused to order production of exculpatory evidence, the prosecutor committed mis-

---

\* Order Granting Dinnerstein's Motion to Withdraw as Counsel on Behalf of the Appellant entered May 18, 1999.

conduct, and the court induced him to plead guilty by misrepresenting its sentencing authority. Finding no judicial error or prosecutorial misconduct, we affirm.

### ISSUES

Helm presents this statement of the issues:

I. Did the court deprive Appellant of his constitutional rights to exculpatory evidence by refusing to order production of the complainant's tax records?

II. Did the prosecution deprive Appellant of his due process right to a fair trial by urging the jury to convict Appellant because he was a professional while the complainant was not, since Appellant had not presented a handwriting expert of his own, and on a theory that the evidence precluded?

III. Did the court deprive Appellant of his constitutional right to due process by inducing him to plead guilty by falsely representing that it had the power to suspend sentences imposed by a California federal court?

The state presents the following arguments:

Argument I

Defense counsel abandoned any claim to the victim's tax records; the prosecution did not suppress the records in that the prosecution never possessed the records; the prosecution had no duty to seek out information not in its possession; and defense counsel had access to the tax returns before trial through the exercise of reasonable diligence.

Argument II

The state did not urge the jury to convict Appellant based on his status as a professional; nor did the state shift the burden of proof from the prosecution to the defense; nor did the state urge the jury to convict Appellant on a theory precluded by the evidence.

Argument III

The record of the change of plea and sentencing hearing has been corrected, there is no evidence that the district court deprived Appellant of his constitutional right to due process by inducing him to plead guilty by falsely representing that it

had the power to suspend the defendant's federal sentence.

### FACTS

In January 1995, a federal district court in California sentenced Helm on several felony counts. In June of that year, he was free on bond pending appeal and living in Wyoming. He started a business consulting firm called International Management Corporation, which he ran from his home and of which he was the sole employee.

The victim in this case owned a small business and hired Helm in June 1995 as a business consultant and bookkeeper. Helm's bookkeeping duties included paying the victim's bills with checks drawn on the victim's account. Helm filled in the date, amount, and payee sections of the checks and then submitted them to the victim to be signed. He was also responsible for maintaining and balancing the victim's checkbook and keeping a computer record of the credits and debits to the checking account.

Helm and the victim agreed on a fee of $850 per month for Helm's services, but the first payment Helm received was in the amount of $1,200. The victim later explained: "I think I was going to pay him a little bit more to start off because the books were a little bit behind and getting the books going." The victim subsequently signed five $850 checks payable to Helm for his monthly fee. After becoming convinced that Helm was forging his signature on unauthorized checks, the victim fired Helm on December 23, 1995, and informed the county sheriff's office.

On July 12, 1996, the state charged Helm with five counts of forgery and five counts of obtaining property by false pretenses. The Information was later amended to include six counts of forgery and two counts of obtaining property by false pretenses. Those charges are identified as Case No. 1559. While Helm was awaiting trial on Case No. 1559, the state filed two more cases against him. In Case No. 1599, it charged Helm with nine counts of forgery involving another victim. In Case No. 1603, the state charged Helm

with a single count of forgery against yet another victim.

The trial court held a jury trial on Case No. 1559 on April 27 through May 5, 1998. The jury found Helm guilty on all eight counts. On August 7, 1998, pursuant to a plea agreement, Helm pleaded guilty to the charges in Case No. 1599 and Case No. 1603. In Case No. 1559, the trial court sentenced Helm to eight concurrent prison terms of eight to ten years, to run consecutively to his federal sentence. In Case No. 1599, Helm received nine prison terms of six to ten years, to run concurrently with each other but consecutively to that in Case No. 1559 and the federal sentence. For Case No. 1603, the court imposed a six- to ten-year prison sentence, to run consecutively to the other sentences. Helm appeals from his conviction and sentences to this Court.

## DISCUSSION

### Discovery Motion

Helm attempts to validate this claim of error on several bases. The gist of the asserted error is that Helm was not provided with certain of the victim's income tax returns and that those income tax returns might have demonstrated the victim treated Helm's alleged monetary crimes as legitimate business expenses rather than losses. Helm goes on to contend that the information would have been vital for him to demonstrate that the crimes he was accused of simply did not occur and the victim had acknowledged this in his tax returns.

First, Helm contends he was denied the right to cross-examine the witnesses against him—in particular, the victim of his crimes. For this proposition, he relies on *State v. Salazar*, 182 Ariz. 604, 898 P.2d 982, 987–88 (Ct.App.1995). In that case, the trial court granted a motion in limine prohibiting the defense from impeaching two of the principal witnesses against the defendant with their juvenile records. The appellate court held that grant of the motion in limine was an abuse of discretion, that the circumstances of the juvenile convictions and the presence of those two witnesses at the scene of the crime

inclined them to testify favorably for the state in hopes of avoiding proceedings to revoke their probation, and that the error in disallowing the evidence in dispute could not be considered harmless because it was so central to the defense's theory of its case. Of course, none of those circumstances appear in this case. Indeed, the record discloses that Helm was afforded a full opportunity to cross-examine the victim in this case.

■ Helm also claims that he was entitled to the tax returns pursuant to W.R.Cr.P. 16(a)(1)(C). Helm apparently contends the tax returns were discoverable under that rule. However, the rule provides that only such documents "which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant" are subject to discovery and inspection under that rule. W.R.Cr.P. 16(a)(1)(C). It was, and continues to be, the position of the state that it never had possession of the victim's tax returns, and there is nothing in the record to suggest to the contrary. Thus, the disputed tax records were not subject to discovery under W.R.Cr.P. 16(a)(1)(C).

Next, Helm asserts that he specifically asked for discovery/production of the tax returns in a motion for discovery. In response to that motion, the state contended the tax returns were not relevant to any issues raised in the case. In the hearing on pending motions, the trial court specifically asked if there were "any issues pertaining to discovery," and the defense responded: "I think it's resolved, judge."

■ Finally, Helm alludes to a *Brady* [1] violation, contending that the state withheld exculpatory evidence from him. The exculpatory evidence alluded to are the tax returns requested in the defense's discovery motion. Our decisions with respect to *Brady* violations are very clear. *Rodriguez v. State*, 962 P.2d 141, 145 (Wyo.1998). The burden of establishing the *Brady* violation is on Helm. *Id.* The first element of that burden is to

1. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct.　1194, 10 L.Ed.2d 215 (1963).

prove the suppression of evidence. *Id.* This record simply does not disclose that any evidence was suppressed by the state. The second element Helm has to prove is that the evidence would have been favorable to him. *Id.* The theory proposed by Helm in this regard is at most speculation that the victim's tax returns might have shown that all sums paid to Helm were treated as business expenses rather than losses. Exactly what difference that would make under the Internal Revenue Code is not included in the argument, and we decline to attempt to ferret out that information. Helm worked for the victim during only the calendar year 1995. The crimes Helm committed occurred in 1995, and his Judgment and Sentence was not entered until September of 1998. Helm's discovery request was for tax returns for the years 1994, 1995, and 1996. Even if it were to be presumed that those tax returns might show Helm's crimes being treated as ordinary business expenses, that would not go to disproving any element of the crimes with which Helm was charged, nor could it serve to impeach the victim. The third element Helm had to prove was that the evidence was material. In the context of a *Brady* challenge, materiality is a mixed question of law and fact, and a reviewing court should conduct an independent examination of the record in determining whether the suppressed evidence is material. *Kerns v. State,* 920 P.2d 632, 638 (Wyo.1996).

> The United States Supreme Court has also held that " 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Relish [v. State],* 860 P.2d [455,] 460 [ (Wyo.1993) ] (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)).

*Spencer v. State,* 925 P.2d 994, 998 (Wyo. 1996).

To the extent Helm has raised an issue with respect to the application of the *Brady* rule, we conclude he has failed to demonstrate that the state suppressed evidence which was favorable to him. Our comprehensive examination of the record reveals that, even if the disputed tax returns had been made available through discovery or through Helm's *Brady* request, they likely would not have been admissible as to any matter or issue in dispute in this case and there is not a reasonable probability their admission would have resulted in a different outcome to these proceedings. We are unable to discern any error with respect to Helm's inability or failure to obtain copies of the disputed tax records.

### *Prosecutorial Misconduct*

 Helm next claims the prosecutor committed misconduct by urging the jury to convict him because he was a professional, because he did not present his own handwriting expert, and on a theory precluded by the evidence. We review claims of prosecutorial misconduct under the following standard:

> The general rule in Wyoming is that a failure to interpose a timely objection to improper argument is treated as a waiver, unless the prosecutor's misconduct is so flagrant as to constitute plain error, requiring reversal. *Armstrong v. State,* 826 P.2d 1106, 1115 (Wyo.1992). A plain error analysis requires the appellant to demonstrate the violation of a clear and unequivocal rule of law, clearly reflected in the record, resulting in the abridgment of a substantial right of the party to his material prejudice. *Arevalo v. State,* 939 P.2d 228, 232 (Wyo.1997). We are reluctant to find plain error in closing arguments "lest the trial court becomes required to control argument because opposing counsel does not object." *James v. State,* 888 P.2d 200, 207 (Wyo.1994) (quoting *Taul v. State,* 862 P.2d 649, 659 (Wyo.1993)).

In analyzing claims of prosecutorial misconduct, we consider the prosecutor's argument in the context in which it was made and with regard to the evidence produced at trial. *Taul v. State,* 862 P.2d 649, 659 (Wyo.1993). Although counsel are allowed great latitude in the argument of cases, argument must be kept within the evidence. *Dice v. State,* 825 P.2d 379, 384 (Wyo.1992). Statements calculated to in-

flame, prejudice or mislead the jury are not permitted. *Taul*, 862 P.2d at 659. *Montoya v. State*, 971 P.2d 134, 136 (Wyo. 1998).

Helm begins his prosecutorial misconduct argument by contending the prosecutor urged the jury to convict him because he was a professional and his victim was not. He points to ten instances where the prosecutor allegedly sought to inflame the jurors by appealing to class prejudice. In his opening statement, the prosecutor: (1) described Helm's crime as "[s]tealing with a pen and paper"; (2) said the victim was not academically inclined but worked with his hands; and ( 3) said the victim, despite his lack of formal education, could recognize his own signature. On direct examination of the victim, the prosecutor elicited testimony that: (4) the victim could read and write only "[s]o-so"; and (5) worked with his hands and hired Helm to work as a bookkeeper, not to work with his hands. On cross-examination of Helm, the prosecutor: (6) elicited testimony that Helm, unlike the victim, never got his hands dirty at work; (7) elicited testimony that Helm had more computer expertise than the victim; and (8) attempted to elicit testimony that the victim was a good mechanic but had minimal verbal skills. In closing arguments, the prosecutor: (9) told a fictional story about a well-dressed gentleman pickpocket, to whom he compared Helm; and (10) told the jury: "The bad news is this: I have to go through many of these exhibits, and I promise not to take one more minute than I have to. The good news is that you're going to see how white collar crime is committed in this country, with a pen and a paper." Helm contends these instances invited the jury to convict him based on dislike for the well-educated or sympathy for those who work with their hands.

■ Of the instances complained of here, defense counsel objected at trial to only number eight, an attempt to have Helm testify that his verbal skills were far superior to those of the victim. The trial court overruled that objection, but the prosecutor was unable to get Helm to agree that he found the victim's verbal skills inferior. Helm was not impermissibly prejudiced by this ex-change for two reasons. First, evidence of a disparity in verbal skills was relevant to show why the victim became reliant upon Helm's allegedly superior abilities. Second, the jurors had ample opportunity to hear both Helm and the victim testify extensively, which provided them a basis for assessing their relative verbal abilities independent of the prosecutor's assertion.

■ Defense counsel did not object to the remainder of the instances that Helm now cites as misconduct. Absent a timely objection at trial, we review claims of prosecutorial misconduct under the plain error standard and assign to appellant the burden of proving prejudice. *Tennant v. State*, 786 P.2d 339, 346 (Wyo.1990). The three instances in the prosecutor's opening statement accurately reflected evidence that the prosecutor intended to present and prepared the jury for the victim's testimony that his signatures on the questioned checks were not genuine. The victim's direct examination testimony and Helm's cross-examination testimony were relevant to show the disparity in education and expertise that led the victim to rely on Helm's bookkeeping services.

■ The prosecutor's characterization, in closing arguments, of Helm as a gentleman pickpocket is almost flattering compared to the closing argument we reviewed in *Tennant*. There, we declined to find plain error in a closing argument wherein the prosecutor referred to the defendant as "a leech, a blood sucker, and a predator on society" and suggested he "might go out and find crippled children to pick on next." 786 P.2d at 346. Finally, the "bad news, good news" portion of the prosecutor's closing argument simply summarized for the jury what he planned to say. A plain error analysis requires the appellant to demonstrate the violation of a clear and unequivocal rule of law, clearly reflected in the record, resulting in the abridgment of a substantial right to his material prejudice. Because Helm has not shown such, we hold that none of the challenged instances were prosecutorial misconduct.

■ Helm next contends the prosecutor impermissibly urged the jury to convict him

because he did not present a handwriting expert at trial. The challenged statement occurred during the prosecutor's rebuttal argument:

> Now, sometimes you can tell more about someone's position by what they don't say as opposed to what they say. And, you know, .the State doesn't have a monopoly on getting an expert witness, on getting a question[ed] documents examiner. The defense could have gotten another question[ed] documents examiner. They didn't. What [the prosecution's expert witness] said is that these were simulations. And he gave very concrete evidence.

Helm claims the statement shifted the burden of proof from the prosecution to the defense. Viewed in context, however, the statement was a comment on the absence of evidentiary support for the defense's theory that the victim actually signed all the questioned checks himself. As this Court has said: " 'It is not improper for the government to draw attention to the failure of lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify.' " *Vigil v. State*, 926 P.2d 351, 358 (Wyo.1996) (quoting *Stanton v. State*, 692 P.2d 947, 949 (Wyo.1984)). We hold the challenged statement was not misconduct.

 In his final assertion of prosecutorial misconduct, Helm argues the prosecutor, in his closing argument, urged the jury to convict him on a theory that was precluded by the evidence. The state presented a theory that the initial payment to Helm of $1,200 was for his bookkeeping services during the months of June and July 1995. In the argument to which Helm objects, the prosecutor argued that Helm had received checks bearing the victim's genuine signature sufficient to compensate him for the months of August through December and, therefore, was not entitled to two $850 checks which bore forged signatures. The defense responded with its theory that the $1,200 was a fee for a separate analysis of the victim's business and Helm was entitled to monthly payments of $850 for his bookkeeping fees beginning in June. According to Helm, the seven checks in the amount of $850 compensated him for his bookkeeping services in the months of

June through December 1995, and the state should have been precluded from arguing otherwise. Because defense counsel did not offer a timely objection, we review using the plain error standard.

The evidence shows that Helm received three checks in the amount of $850 each, dated in the month of November 1995, and that two of them bore forged signatures. Helm's argument here does not account for the multiple payments or forgeries. We hold the jury could have reasonably concluded from the evidence presented that the victim paid Helm $1,200 for June and July and $850 for each of the next five months. That conclusion leaves Helm with no legitimate claim to the two remaining $850 checks, from which the jury could have reasonably concluded that he was the person who forged them. Because the evidence supported the state's theory, we hold the prosecutor did not commit misconduct by urging the jury to convict on that theory.

### *False Representations by Trial Court*

In his final assignment of error, Helm claims the trial court deprived him of due process by inducing him to plead guilty by falsely representing that it had the power to suspend a sentence imposed by a federal court in California. He bases that claim on a transcript of his sentencing hearing in which the trial court is reported to have said: "The Court has the discretion to order the sentences in number 1599 and 1603 to run concurrently with or consecutively with the sentence in criminal number 1559; *and suspend the sentence* in the United States District Court in California in case number 93–545(A)." (Emphasis added.)

Both the official court reporter and a freelance reporter attended and reported Helm's change of plea and sentencing hearing on August 7, 1998. In preparing his brief for this appeal, Helm relied on the transcript of the freelance reporter. Upon receipt of Helm's brief, the state examined the transcript from the official reporter and found a discrepancy. The state then filed a Motion to Correct Record, asking the trial court to find the freelance reporter had erred and the official reporter had correctly reported the

hearing. The court so ordered. As corrected, the contested portion of the record now reads: "The Court has the discretion to order the sentences in number 1599 and 1603 to run concurrently with or consecutively to the sentence in criminal number 1559; *and the defendant's sentence* in the United States District Court of California in case number 93–545(A)." (Emphasis added.)

The corrected record accurately reflects the contents of a plea agreement signed by Helm and the state prior to the hearing. The record having been corrected, Helm's argument is unsupported and must fail.

The judgments and sentences of the trial court are affirmed in all respects.